IN THE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:15-CV-80789-kam
HONORABLE KENNETH MARRA

SOUTHERN-OWNERS INSURANCE
COMPANY,

      Plaintiff,

      v.

WENTWORTH CONSTRUCTION
COMPANY, LLC; 2700 NORTH OCEAN
CONDOMINIUM ASSOCIATION, INC., ET
AL,

      Defendant.
_____/

## PLAINTIFF, SOUTHERN-OWNERS INSURANCE COMPANY'S MOTION FOR FINAL SUMMARY JUDGMENT REGARDING ITS DUTY TO DEFEND
### (Dispositive Motion)

COMES NOW the Plaintiff, Southern-Owners Insurance Company ("Southern-Owners"), by and through its undersigned counsel and pursuant to S.D. Local Rule 56.1 and Rule 56 of the Federal Rules of Civil Procedure, and files this Motion for Final Summary Judgment Regarding its Duty to Defend and Memorandum of Law. Southern-Owners also relies upon its Statement of Undisputed Facts filed contemporaneously with this Motion.

## MOTION

1.  This is an action for declaratory relief in regards to coverage for Wentworth Construction Company, LLC ("Wentworth"), Catalfumo Construction, LLC ("Catalfumo"), and Singer Island Condominiums, Ltd., ("Singer Island") under a policy of insurance issued to Wentworth, for the allegations contained in the underlying action in Palm Beach County bearing case number 2014-CA-010718 ("Underlying lawsuit").[1]

2.  The Underlying lawsuit involves claims for damages arising out of alleged construction defects at the 2700 North Ocean Condominium, located in Palm Beach County, Florida.

3.  Count I of Plaintiff's Complaint for Declaratory Relief seeks a declaration that the damages alleged in the Underlying Action did not occur within the Southern-Owners' policy period.

4.  Count II of Plaintiff's Complaint for Declaratory Relief seeks a declaration that the damages alleged in the Underlying Action fall within a coverage exclusion in Southern-Owners 'policy.

5.  Count III of Plaintiff's Complaint for Declaratory Relief seeks a declaration that neither Catalfumo nor Singer Island Condominiums, Ltd., are considered Additional

---

[1] The issues in this case have been bifurcated, therefore, the only issue moving forward at this time is the issue of Southern-Owners duty to defend. [DE 30]

Insureds under the Southern-Owners' policy in regards to the damages alleged in the Underlying Action.

6. The complaint filed in the Underlying Action fails to provide a date that the alleged damages occurred.

7. Southern-Owners seeks the entry of summary judgment in its favor finding that all pertinent evidence proves that no resulting damages could have occurred during the Southern-Owners' policy period.

8. Additionally, Southern-Owners seeks entry of summary judgment in its favor because all of the defects/damages alleged in the underlying complaint fall within one of the policy exclusions.

9. Therefore, Southern-Owners has no duty to defend any party in the underlying lawsuit.

10. In support of this Motion for Summary Judgment Southern-Owners relies upon its Statement of Undisputed Facts (and supporting exhibits), as well as the Memorandum of Law incorporated below.

WHEREFORE, the Plaintiff, Southern-Owners Insurance Company, respectfully requests that this Court enter an Order granting summary judgment in favor of Southern-Owners finding that Southern-Owners had no duty to defend any party in the underlying lawsuit.

## MEMORANDUM OF LAW

Rule 56(a) of the Federal Rules of Civil Procedure, mandates the entry of summary judgment when there is no genuine dispute as to a material fact and the movant

is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record demonstrates there is no genuine issue of material fact. Fed.R.Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is particularly appropriate to resolve questions of insurance coverage, since the interpretation of a written contract is a matter of law to be determined by the court. *Technical Coating Applicators, Inc. v. U.S. Fidelity and Guar. Co.*, 157 F.3d 843 (11th Cir. 1998); *DEC Electric, Inc. v. Raphael Construction Corp.*, 558 So.2d 427 (Fla. 1990); *Jones v. Utica Mutual Ins. Co.*, 463 So.2d 1153 (Fla. 1985).

In this case, Southern-Owners is entitled to summary judgment on the basis of the plain meaning and legal effect of its policy, which does not provide coverage for the claims which have been asserted in the Underlying lawsuit.

I.  **Florida Law**

A federal court sitting in a diversity action applies state law using the choice of law rules of the forum state, in this case, Florida. *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014). Florida adheres to the rule of lex loci contractus, which, as applied to insurance contracts, provides that the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage. *State Farm Mut. Auto. Ins. Co. v.*

*Roach*, 945 So. 2d 1160, 1163 (Fla. 2006). The subject policy of insurance was issued in Florida, therefore, Florida law applies.

Under Florida law, "if the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used, so as to give effect to the policy as it was written." *Travelers Indem. Co. v. PCR Inc.*, 889 So.2d 779, 785 (Fla.2004). Policy language is only considered ambiguous if the language "is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." *Id.* quoting *Auto-Owners v. Anderson*, 756 So. 2d. 29, 34 (Fla. 2000).

Here, the Southern-Owners policy provides:

> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (2) The "bodily injury" or "property damage" **occurs during** the policy period;
>
> (CGL Coverage Form p. 1 of 21)

18. "Property Damage" means

> a. physical injury to tangible property including all resulting loss of use of that property.
>
> (CGL Coverage for p. 20 of 21)

Based upon the plain language of the policy the policy only covers "property damage," and only if that "property damage" "occurs during the policy period."

Additionally, the policy contains the following exclusions:

> Coverage A- Bodily Injury and Property Damage Liability

1. Exclusions
This insurance does not apply to:

    j. Damage to Property

        "Property damage" to

(6) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
(7) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

Paragraph (7) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard". (CGL Coverage Form p. 5 of 21)

    l. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard." (CGL Coverage Form p. 6 of 21)

    k. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it. (CGL Coverage Form p. 6 of 21)

Based upon the plain language of the above referenced policy exclusions, it is clear that the policy does not provide coverage for damage to the insureds own work or products, whether the damages occur during ongoing operations or after operations have been completed.

## II.  The Duty to Defend Standard

It is well settled Florida law that the threshold determination regarding a liability insurer's duty to defend depends solely upon the *allegations* contained within the four

corners of the complaint against the insured. *Jones v. Florida Ins. Guar. Assoc., Inc.*, 908 So.2d 435 (Fla. 2005); *National Union Fire Ins. Co. v. Lenox Liquors Inc.*, 358 So.2d 533 (Fla. 1977).

However, the Florida Supreme Court in *Higgins v. State Farm Fire and Cas. Co.*, 894 So.2d 5, (Fla. 2005), acknowledged that there are natural exceptions to this general rule where a duty to defend can turn on facts not normally alleged in a complaint. *Id.* at 10 n. 2. Florida District Court of Appeals have adopted circumstances warranting the consideration of facts outside the underlying complaint. *See Acosta, Inc. v. Nat'l Union Fire Ins. Co.*, 39 So.3d 565 (Fla. 1st DCA 2010) (the court concluded it proper to consider the complaint from a previously filed action when determining defense and liability coverage with an exclusion for prior litigation).

This proposition was then bolstered by the federal court in *Composite Structures, Inc. v. Continental Ins. Co.*, 560 Fed.Appx. 861 (2014), wherein the Eleventh Circuit acknowledged the analysis in *Higgins* and stating:

> When the insurer's claim that there is no duty to defend based on factual issues that would not normally be alleged in the underlying complaint, "[W]e believe the courts may entertain a declaratory action seeking a determination of a factual issue upon which the duty to defend depends."[citing *Higgins*]

*Id.* at 867. Therefore, the court has the discretion to review and consider facts outside the four corner allegations of the underlying complaint, especially those on which a duty to defend depends.

Additionally, inferences that can be made from the complaint "are not sufficient" to trigger the duty to defend. *Wackenhut Services, Inc., v. National Union Fire Ins. Co.,*

15 F. Supp. 2d 1314 (S.D. Fla. 1998); *See Also, Fun Spree Vacations v. Orion Ins.*, 659 So. 2d 419 (Fla. 3d DCA 1995) (Florida court rejecting the argument that "reasonable inferences" should be considered and instead holding "inferences are not sufficient.").

**III.    The underlying amended complaint does not state when the alleged damages occurred, however, the court should determine that resultant "property damage" due to stucco application could not have occurred during the Southern-Owners' policy period.**

The underlying amended complaint does not contain any allegations regarding the date the alleged damages to the property "occurred." Additionally, it does not contain any allegations as to the date that Wentworth actually performed work on the subject buildings. Since this is not something that would typically be alleged in a complaint, the court can look outside the complaint to resolve this issue.

No Florida state court appellate decision has decided which trigger applies to determining when property damage occurs. Although the Eleventh Circuit in *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240 (11th Cir. 2015) applied the "injury in fact" theory, it specifically noted that it was limiting its holding to the facts of that case, and expressed no opinion on what the trigger should be where it is difficult or impossible to determine when the property was damaged. *Id.* at 1247.

Regardless of whether the court applies the "injury in fact" theory or the "manifestation" theory, it is clear that no resultant "property damage" "occurred" prior to the expiration of the Southern-Owners policy period on December 1, 2006.

Applying the "injury in fact" theory, the allegations in the complaint and the information we know about the timing of Wentworth's work, demonstrate that no resultant "property damage" could have "occurred" prior to December 1, 2006.

A look at a timeline of construction demonstrates that Wentworth had just began work on the project a few weeks prior to December 1, 2006—the date the Southern-Owners policy was cancelled. Below is a timeline of relevant information:

- The notice of commencement of the project was issued by the City of Riviera Beach on April 6, 2006.

- Wentworth signed the contract with Catalfumo on August 31, 2006. [*See* Exhibit B to Statement of Undisputed Facts].

- Catalfumo signed the contract on September 25, 2006. [*See* Exhibit B to Statement of Undisputed Facts].

- Wentworth began work on the project in November 2006. [*See* Exhibit C to Statement of Undisputed Facts].

- Prior to December 1, 2006, Wentworth had only performed minimal work on one Tower I, including prep work and only some scratch coating on balcony ceilings of the first few floors. [*See* Exhibit D to Statement of Undisputed Facts and exhibits to Exhibit D].

- Prior to December 1, 2006, Wentworth had not begun any work on Tower II. [*See* Exhibit D to Statement of Undisputed Facts and exhibits to Exhibit D].

- Thee Sothern-Owners' policy was cancelled December 1, 2006. [*See* Exhibit F to Statement of Undisputed Facts, ¶15].

- The final certificate of completion for the project was issued in January 2008. [*See* Exhibit E to Statement of Undisputed Facts].

In sum, Wentworth did not begin working on the project until November 2006, only one (1) month before the Southern-Owners policy was cancelled. Prior to December 1, 2006, Wentworth had performed only minimal work on Tower I—including corner beads, stucco accessories, and scratch coating on some balcony ceilings of a few floors. Wentworth had not begun any work on Tower II. [*See* Exhibit D, to Statement of Undisputed Facts- Affidavit of Frank M. "Pete" Clements, III].

Exhibit 1 of the Underlying Third Amended Complain contains a list of the alleged "stucco related defects, deficiencies, and *resultant damages*", which provides: "The following conditions have occurred in the stucco at the roofs, exterior elevation, and site:

- Bond failure;
- Delamination;
- Cracks;
- Staining;
- Leaks and/or water intrusion."

Bond failure, delamination, cracks, staining, leaks and/or water intrusion are not resultant "property damage," to property other than Wentworth's own work. The Underlying Action does not contain any allegations of resultant property damage to any other property due to alleged water intrusion in the stucco. See *Bradfield v. Mid-Continent Cas. Co.*, 143 F. Supp. 3d 1215, 1237 (M.D. Fla. 2015)(Court noted that although underlying complaint mentioned "water intrusion" it did not contain any allegations of actual damages from water intrusion, and held that all of the damages listed were damages for

repair/replacement of the defective materials and our work performed by the insured which was not "property damage" as defined by the policy.)

Even if the Underlying Complaint did allege "resultant damage" from water intrusion into the stucco, as of December 1, 2006 the project was in its structural shell phase, and was not dried in. Thus, no resultant "property damage", due to "leaks and/or water intrusion" from the stucco, could have "occurred" during that time period. [See Exhibit D to Statement of Undisputed Facts].

Furthermore, the only place that any cementious stucco had even been applied was on the ceilings of some balconies on Tower I. Since the stucco, itself, had not even been applied to the buildings exterior, there could be no resultant damages due to defective stucco application.

If this Court were to apply the "manifestation theory" to this case, it is even more apparent that no resultant "property damage" "occurred" during the Southern-Owners policy period. The Underlying complaint asserts that the defects were not discovered by the homeowners until after their purchase and occupancy of the units. The buildings were not completed until 2008, two (2) years after the Southern-Owners policy was cancelled. The court in *Essex Builders Group, Inc. v. Amerisure Insurance Co.*, 485 F. Supp. 2d 1302 (M.D. Fla. 2006), held that where water damage to the apartment buildings did not become visible until late 2001, it did not "occur" during the policy period which ended in November 2000. The court in *Essex* cited to the First DCA decision in *Travelers Ins. Co. v. C.J. Gayfer's & Co.*, 366 So.2d 1199 (Fla. 1st DCA 1979), which held that the time of occurrence within the meaning of an "occurrence" policy is the time at which the injury

first manifests itself. The court in *Essex* noted that if the insurer had moved for summary judgment on this issue, the court would have granted the motion. (Rather the insured moved for summary judgment, which was denied). Thus, applying the manifestation theory, it is abundantly clear that no property damage occurred during the Southern-Owners policy period.

Since the Underlying Action does not contain any allegations of "property damage" which could have "occurred" during the Southern-Owners policy period, Southern-Owners is entitled to summary judgment on the duty to defend.

IV.  **Southern-Owners has no duty to defend as all of the damages alleged in the underlying complaint fall squarely within one of the policy's exclusions.**

Under Florida law, "if the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used, so as to give effect to the policy as it was written." *Travelers Indem. Co. v. PCR Inc.*, 889 So.2d 779, 785 (Fla.2004). Policy language is only considered ambiguous if the language "is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage." *Id.* quoting *Auto-Owners v. Anderson*, 756 So. 2d. 29, 34 (Fla. 2000).

As previously mentioned, the Southern-Owners policy contains several exclusions which specifically excludes coverage for damages to the insured's own work, arising out of it or any part of it, both during ongoing operations and after operations have been completed. Therefore, any claim for damages for the repair and/or removal and

replacement of the insured's own work or product is not covered under the Southern-Owners policy.

The Eleventh Circuit held, in an opinion following the Florida Supreme Court, that "there is a difference between a claim for the cost of repairing or removing defective work, which is not a claim for "property damage," and a claim for the costs of repairing damage caused by the defective work, which is a claim for "property damage." *Carithers*, 782 F.3d at 1249; citing *Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 889 (Fla. 2007).

"Property damage" involves only "damage beyond the faulty workmanship or defective work." *J.S.U.B., Inc.*, at 889. The "faulty workmanship or defective work . . . must damage the otherwise non-defective completed project." *Id.*

Exhibit 1 to the Third Amended Complaint in the Underlying Action lists the "stucco related defects, deficiencies, and *resultant damages*" that the underlying plaintiff is alleging. This list states that "bond failure, delamination, cracks, staining, and leaks have occurred in the stucco." This list contains allegations of damages to the stucco work itself, and do not actually allege any "resultant" property damage. *See Bradfield, supra* at 1238 (noting that although the underlying complaint mentioned "water intrusion" it did not contain any allegations of actual damages from water intrusion, and held that all of the damages listed were damages for repair/replacement of the defective materials and our work performed by the insured which was not "property damage" as defined by the policy.)

Here, the underlying plaintiff is simply seeking damages to repair/replace defects in the stucco itself. Such damages are specifically excluded from coverage under the Southern-Owners' policy as damages to the insured's own work.

As previously stated, the Underlying Action does not contain any actual allegations of *resulting property damage* due to defective stucco work. Therefore, summary judgment should be granted to Southern-Owners on the duty to defend.

V. **There is no coverage for Catalfumo Construction, LLC & Singer Island Condominiums, Ltd. as Additional Insureds under Southern-Owners' policy.**

The Southern-Owners policy contains endorsement 55202, "Additional Insured Exclusion-Products-Completed Operations", which provides:

> A. Under SECTION I- COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILTY, 2. Exclusions, the following exclusion is added:
>
> **2. Exclusions**
>
> This insurance does not apply to:
>
> The Additional Insured for the "Products-completed operations hazard."
>
> B. Under Section II- WHO IS AN INSURED, the following is added:
>
> The person or organization shown in the above Schedule is an Additional Insured, but only with respect to liability arising out of "your work" for that insured by or for you.

Based upon this endorsement, Catalfumo and Singer Island may qualify as additional insureds, but only for liability arising out of Wentworth's work for them. Since Catalfumo and Singer Island would only qualify for coverage for liability arising

out of Wentworth's stucco work, the same policy provisions and exclusions outlined above apply equally to a determination of coverage for Catalfumo and Singer Island. Therefore, summary judgment should be granted to Southern-Owners on the duty to defend as it pertains to Catalfumo and Singer Island.

## CONCLUSION

Southern-Owner's Motion for Summary Judgment should be granted as there are no genuine issues of material fact as to the existence of a duty to defend.

## RULE 7.1 (b) RQUEST FOR HEARING

Pursuant to S.D. Local Rule 7.1(b), Southern-Owners requests that a hearing be held on its Motion for Summary Judgment. This Motion involves the interpretation of unique insurance coverage issues and Southern-Owners believes that a hearing will help aid the Court in its understanding of the issues. The estimated length of the hearing would be one (1) hour.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that the above was filed through the CM/ECF system who will provide a copy to Jonathan Newberg, Esq. (jn@lydeckerdiaz.com; sm@lydeckerdiaz.com), 1221 Brickell Ave., Nineteenth Floor, Miami, FL 33131 and Evan Berger, Esq. (eberger@bplegal.com; alevine@bplegal.com; mabailey@bplegal.com) 1 East Broward Blvd., Suite 1800, Ft. Lauderdale, FL 33301and sent certified and US Mail to Wentworth Construction, 25330 S.W. Martin Highway,

Okeechobee, FL 34974 this 3rd day of December, 2018.

                         s/ Carri S. Leininger, Esq.
                         Carri S. Leininger, Esq.
                         (eService@wlclaw.com)
                         Florida Bar No. 0861022
                         Jessica L. Gregory, Esq.
                         Florida Bar No. 92019
                         Attorney for Southern-Owners Insurance Company
                         Williams, Leininger & Cosby, P.A.
                         11300 US Highway One, Suite 300
                         North Palm Beach, Florida 33408
                         Telephone No. (561)615-5666
                         Facsimile No. (561)615-9606