UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-80789-CIV-MARRA

SOUTHERN-OWNERS INSURANCE COMPANY,

     Plaintiff,

vs.

WENTWORTH CONSTRUCTION COMPANY, LLC,
2700 NORTH OCEAN CONDOMINIUM ASSOC., INC.,
CATALFUMO CONSTRUCTION, LLC, and
SINGER ISLAND CONDOMINIUMS, LTD.

     Defendants.

_____/

CATALFUMO CONSTRUCTION, LLC,

     Defendant/Counter-Plaintiff,

v.

SOUTHERN-OWNERS INSURANCE COMPANY,

     Plaintiff/Counter-Defendant.

_____/

**<u>ORDER</u>**

     This Cause is before the Court upon Plaintiff/Counter-Defendant Southern-Owners Insurance Company's ("Southern-Owners") Motion for Final Summary Judgment Regarding its Duty to Defend ("Motion for Summary Judgment") (DE 95) and its Statement of Undisputed Facts in Support of its Motion for Summary Judgment (DE 96). Defendants/Counter-Plaintiffs Catalfumo Construction, LLC ("Catalfumo") and Singer Island Condominium, LTD ("Singer Island Ltd.") filed a Response to the Motion for Summary Judgment (DE 99) and a Response to the Statement of Undisputed Facts (DE 100). Defendant 2700 North Ocean Condominium

Association, Inc. ("the Association") filed a Notice of Joinder in Co-Defendants Response to Plaintiff's Motion for Summary Judgment and Response to Statement of Undisputed Facts (DE 101). Southern-Owners filed a Reply (DE 100). The Court has considered the Motion and the Response and is otherwise advised in the premises.

## I.   <u>BACKGROUND</u>

This matter arises from a construction project known as the Ritz Carlton Residences at Singer Island, Florida (the "Project" or "Condominium"). On December 21, 2017,[1] the Association filed its Fifth Amended Complaint against Catalfumo, Wentworth Construction Company, LLC ("Wentworth"), and other parties in Palm Beach County Circuit Court in the case styled *2700 North Ocean Condominium Association, Inc. v. Singer Island Condominiums, Ltd.*, et al, Palm Beach County Case # 2014-CA-010718. (the "Underlying Action").

Southern-Owners issued Wentworth a Commercial General Liability insurance policy, and among others, Catalfumo and Singer Island Ltd. are named as additional insureds under the Plaintiff's CGL Policy. (DE 96 at pdf 211).

In the underlying lawsuit, Southern-Owners has defended Wentworth under a reservation of rights. (DE 71, ¶ 50). Additionally, Catalfumo and Singer Island Ltd. submitted claims for coverage as additional insureds under the policy. (*Id.* at ¶¶ 51-53).

In this case, Southern-Owners filed its Fourth Amended Complaint for Declaratory Judgment under 28 U.S.C. § 2201 ("Declaratory Judgment Action"), seeking a declaration that Southern-Owners has no duty to defend and no duty to indemnify Catalfumo, Wentworth, or

---

[1] *See* #2014-CA-010718 (DE 1708) Order Granting Plaintiff's Motion for Leave to File Fifth Amended Complaint (DE 1690); the Court takes judicial notice of the Fifteenth Judicial Circuit of Florida docket.

Singer Island Ltd. for: damages that did not occur during the periods of the CGL Policy (Count I); damages that fall within an exclusion under the CGL Policy relating to damages in the work performed or products used by Wentworth (Count II); and damages excluded under the Products Completed Operations Endorsement (Count III).  (DE 71).

Southern-Owners has filed the instant Motion, seeking summary judgment regarding its duty to defend.  (DE 95, "Mot.").  Southern-Owners urges the Court to consider this an exception to the general rule where a duty to defend can turn on facts not normally alleged in a complaint.  (*Id*. at 7).  Southern-Owners contends that because the underlying amended complaint does not indicate when the alleged damage occurred, the Court can look outside the complaint to find that any resultant property damage due to stucco application could not have occurred during the Southern-Owners' policy period.  (*Id*. at 8-12).   Additionally, Southern-Owners insists it has no duty to defend because the damages alleged in the underlying complaint fall within policy exclusions.  (*Id*. at 12-14).  Finally, Southern-Owners asserts there is no coverage for Catalfumo and Singer Island Ltd. as additional insureds under Southern-Owners' policy because they would only qualify for coverage for liability arising out of Wentworth's stucco work, and the same policy provisions and exclusions that eliminate Southern-Owners' duty to defend Wentworth apply to the additional insureds.  (*Id.* at 14-15).

In response, Catalfumo and Singer Island Ltd. (collectively "Insureds") argue the pleadings create an undeniable duty to defend.[2]  (DE 99, "Opp." at 9).  Insureds argue that this is not an exceptionally rare case that calls for the Court to look beyond the allegations in the underlying

---

[2] The Association's Notice of Joinder in Co-Defendants' Response to Southern-Owners' Motion for Summary Judgment

complaint.  (Opp. at 10).  Insureds assert that "[a]n expert affidavit cannot override the pleadings at the duty to defend stage."  (*Id.* at 11).  Insureds contend that the "property damage" alleged in the underlying complaint is just that–property damage that falls squarely within the policy coverage and does not fall into a policy exclusion.  (*Id.* at 11).  Furthermore, Insureds note the duty to defend is much broader than the duty to indemnify and insist that there is no basis for the motion for summary judgment to be granted.  (*Id.* at 12).

<u>MATERIAL FACTS</u>

Southern-Owners issued the CGL policy to Wentworth.  (DE 96 at pdf 195-98, 199-378). Wentworth "was a subcontractor that, among other things, provided and performed stucco related labor, services, and/or materials at and/or for the Condominium."  (DE 100, Underlying Fourth Amended Complaint at pdf 23 ¶ 21).  Catalfumo was the general contractor of the Condominium. (*Id.* at pdf 21 ¶ 7).  Singer Island Ltd. was a developer of the Condominium.  (*Id.* at pdf 20, ¶ 5). Catalfumo and Singer Island Ltd. were listed as additional insureds under Wentworth's CGL policy.  (DE 96 at pdf 211).

The Southern-Owners policy was effective first from September 1, 2002 through September 1, 2003 and was renewed annually until the cancellation effective December 1, 2006. (*Id.* at pdf 196, 378).

The damage alleged in the underlying lawsuit includes stuccowork damage.  (DE 100 at pdf 83-87).  However, the underlying lawsuit does not include allegations of when the damage occurred or when it was discovered.  (*Id.*).

Prior to December 1, 2006, some stucco work had begun on one of the towers, although the parties dispute how much was completed before the policy was canceled.  (Mot. at 3; DE 100

at 2-3).   The extrinsic evidence Southern-Owners hopes the Court will consider is the affidavit of

Frank Clements, III, a project manager and general contractor with Pinnacle Construction, who

was retained to review documents associated with the construction of the subject properties.  (DE

96 at pdf 164).  In pertinent part, the Clements affidavit stated:

> 6. Based upon my review of the project files/ above referenced documents, it is my opinion that Wentworth did not begin work on the project until November 2006. [See Exhibit 1, Wentworth Superintendent Daily Log shows Wentworth commenced work on site on November 6, 2006; Exhibit 2, Wentworth Application for Payment, dated 11/30/2006- shows work started that month].
>
> 7. Based upon my review of the project files/ above referenced documents, it is my opinion that, prior to December 1, 2006, Wentworth had not performed any work on Tower II of the project.
>
> 8. Based upon my review of the project files / above referenced documents, it is my opinion that, prior to December 1, 2006, Wentworth had only performed the following work on Tower I:
>   i.     delivery of materials; and
>   ii.    the start of corner beads and other stucco accessories.
>   iii.   Scratch coating balcony ceiling lids at floors 2-5 of Tower I. [See Exhibit 3, Wentworth Superintendent Daily Log daily log for November 13-15, 2006, shows Wentworth crew performing early stages of work on lower levels of Tower I; Exhibit 4 Wentworth Superintendent Daily Log, dated 11/13/06-12/1/06].
>
> 9. As of November 27, 2006 (3 days prior to December l, 2006), the key submittal for stucco had not been approved [See Exhibit 5- Catalfumo Transmittal #01237 to Wentworth, dated 11/27/06].
>
> 10. As of December 1, 2006, Tower I was in the structural shell stage of construction, and not dried in. As such, there could not be any resultant water intrusion damage to any interior components such as insulation, drywall, cabinets, contents, etc., due to any purported defects in stucco installation, as of that date.
>
> 11. As previously stated, as of December 1, 2006, no stucco work had been performed on Tower II. Therefore, there could be no resultant damage to Tower II, due to purported defects in stucco, as of that date.

(*Id.* at 164-65).

Attached to the affidavit is an application and certificate for payment dated November 21, 2006 that provides that for Tower 1, 75% of the lath and stucco work on balconies through the fourth floor had been completed and 75% of the lath labor and 50% of the stucco labor had been completed on the fifth floor.  (*Id.* at pdf 169-70).

The Certificate of Completion for the project was issued January 30, 2008.  (DE 96 at pdf 193).

THE POLICY

**a.  Policy Coverage:**

The Southern-Owners policy provides the following coverage for "bodily injury" and "property damage:"

> **SECTION** I - **COVERAGES**
> **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
>
> **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> >
> > (2) The "bodily injury" or "property damage" occurs during the policy period; . . . .

(DE 96 at pdf 218). Under "Supplemental Declarations," the policy for the term starting September 1, 2006 states:

> 55202 ADDITIONAL INSURED
> EXCLUSION - PRODUCTS - COMPLETED OPERATIONS
>
> NAME OF PERSON OR ORGANIZATION:
>
> …

6

SINGER ISLAND CONDOMINIUMS LTD
CATALFUMO CONSTRUCTION LLC

(DE 96 at pdf 211).

**b.  Policy Exclusions:**

The Southern-Owners policy then provides the following exclusions for Coverage A

"bodily injury and property damage liability:"

**2. Exclusions**
This insurance does not apply to:

…

**j. Damage To Property**
    "Property damage" to:

(6) That particular part of real property on which any insured or any
contractors or subcontractors working directly or indirectly on your behalf
are performing operations, if the "property damage" arises out of those
operations; or

(7) That particular part of any property that must be restored, repaired or
replaced because "your work" was incorrectly performed on it.

. . .

Paragraphs (4), (5), (6) and (7) of this exclusion do not apply to liability
assumed under a sidetrack agreement.

Paragraph (7) of this exclusion does not apply to "property damage"
included in the "products-completed operations hazard".

**k. Damage To Your Product**
    "Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**
    "Property damage" to "your work" arising out of it or any part of it and
    included in the "products-completed operations hazard".

(DE 96 at pdf 222-23).

7

The Southern-Owners policy included the following provisions about the endorsement in the supplemental declaration:

> **ADDITIONAL INSURED**
> **EXCLUSION - PRODUCTS-COMPLETED OPERATIONS**
>
> **A.** Under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions,** the following exclusion is added:
>
> > **2. Exclusions**
> >
> > This insurance does not apply to:
> >
> > The Additional Insured for the "products-completed operations hazard".
>
> **B.** Under **SECTION II** - **WHO IS AN INSURED,** the following is added:
>
> > The person or organization shown in the above Schedule is an Additional Insured, but only with respect to liability arising out of "your work" for that insured by or for you.

(DE 96 at pdf 216).

<u>UNDERLYING COMPLAINT</u>

The Association's operative Fifth Amended Complaint seeks damages for defects and deficiencies resulting from the Project.[3]  (DE 100 at pdf 19-121).  The Fourth Amended Complaint

---

[3] Insureds inform the Court that "[t]here is actually a Fifth Amended Complaint, but it is exactly the same as the Fourth Amended Complaint beyond adding a new party."  (DE 100 at pdf 2).  The Court takes judicial notice of the Fifth Amended Complaint, filed on December 21, 2017 in # 014-CA-010718, DE 1690, 1708.  Neither party attached the Fifth Amended Complaint; Southern-Owners only attached the Third Amended Complaint and Insureds only attached the Fourth Amended Complaint.  Because the Fourth Amended Complaint and the Fifth Amended Complaint are identical, the Court will reference the underlying Fourth Amended Complaint, which was filed with this Court.  (DE 100, pdf 18-121).

alleges three counts against Wentworth: 1) the breach of statutory implied warranty; 2) negligence;

and 3) violation of building code Fla. Stat. § 553.84. (*Id.* at pdf 83-87).

Exhibit 1, attached to the Third Amended Complaint and incorporated by reference in the

Fourth Amended Complaint,[4] details the extent of the damage relating to the stucco work:

I. **Stucco defects / deficiencies and resultant damages, such as:**
Bond failure, delamination, cracks, staining, leaks and/or water intrusion have occurred in the stucco in the following areas:
(a) Roofs
  (i) Building A, bond failure on exterior walls and walls above elevator machine room
  (ii) Building A, extensive cracking on east parapet wall
  (iii) Building A, cracks in elevated structures
  (iv) Building A. ferrous material/staining
  (v) Building B, bond failure in exterior walls and walls above south elevator machine room
  (vi) Building B, cracks, voids and poorly embedded corner beads on roof structures
(b) Exterior Elevations including Garage
  (i) Buildings A and B, delamination, and bond failure on all faces
  (ii) Buildings A and B, extensive cracking and bleeding moisture through cracks
  (iii) Buildings A and B, water intrusion between masonryy/concrete and stucco
  (iv) Buildings A and B, efflorescence and water stains below cracks in upper elevations on all faces
  (v) Buildings A and B, cracking and chipping on balcony edges
  (vi) Buildings A and B, bond failure on balcony soffits
  (vii) Building A, ferrous material/staining on walls in various locations
  (viii) Building A and B, water weeping from horizontal control joints
  (ix) Building B, heaved and cracked stucco and the presents of water behind stucco and west entry
  (x) Building B, staining from ferrous materials in locations throughout exterior walls
  (xi) Building B, cracks, voids, exposed cornel' beads and unpainted areas on exterior of units
  (xii) Building B, cracking and chipping on balconies

---

[4] Insureds note that Exhibit 1 to the Third Amended Complaint "is not attached again to the Fourth Amended Complaint, but is cited in the Fourth Amended Complaint." (DE 100, at pdf 4).

(DE 96 at pdf 109-10).

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate where the Court is satisfied "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Which facts are material depends on the substantive law applicable to the case." *Core Constr. Servs. Se., Inc. v. Crum & Forster Specialty Ins. Co.*, 2015 WL 8043940, at *1 (M.D. Fla. Dec. 7, 2015), *aff'd*, 658 F. App'x 534 (11th Cir. 2016)

"The court construes all evidence and reasonable inferences in the light most favorable to the nonmovant . . ."  *Wilson v. Doss*, 552 F. App'x 970, 971 (11th Cir. 2014). "Summary judgment is appropriate if the record evidence, so construed, raises no genuine issue of material fact." *Id.* (citing Fed. R. Civ. . 56(c)).  However, where summary judgment turns on a pure question of law, such as the interpretation of an unambiguous contract provision, there are no relevant factual disputes.  *See Fernandez v. Homestar at Miller Cove, Inc.*, 935 So.2d 547, 550 (Fla. Dist. Ct. App. 2006); *Fayad v. Clarendon Nat. Ins. Co.*, 899 So.2d 1082, 1085 (Fla. 2005).

"In a declaratory judgment action, '[i]f the allegations in the complaint alleging a claim against the insured either are acts not covered by the policy or are excluded from the policy's coverage, the insurer is not obligated to defend or indemnify the insured.'"  *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1357–58 (M.D. Fla. 2001) (quoting *Transcontinental Ins. Co. v. Ice Sys. of Am., Inc.,* 847 F. Supp. 947, 949–50 (M.D.Fla.1994)).  "Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *Id.* at 1358.

The insured bears the burden of proving the claim falls within the Policy's affirmative grant of coverage. *East Fla. Hauling, Inc. v. Lexington Ins. Co.*, 913 So.2d 673, 678 (Fla. Dist. Ct. App. 2005); *Hudson Ins. Co. v. Double D Mgmt. Co., Inc.,* 768 F.Supp. 1542 (M.D. Fla. 1991). Once the insured shows coverage, the burden shifts to the insurer to prove an exclusion (often contained within an endorsement) applies to the coverage. *LaFarge Corp. v. Travelers Indem. Co.,* 118 F.3d 1511, 1516 (11th Cir. 1997); *Hermitage Ins. Co. v. Studio, Inc. Night Club Corp.*, 2009 WL 103664, at *3 (M.D. Fla. 2009). If there is an exception to the exclusion, the burden once again is placed on the insured to demonstrate the exception to the exclusion.[5]

## III. **APPLICABLE LAW**

Eight Corners Rule:

 "The construction of insurance contracts is governed by substantive state law." *Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 819 (11th Cir. 1985). Florida[6] law places on the insured the burden of proving that a claim against it is covered by the insurance policy. *LaFarge Corp.*, 118 F.3d at 1516. Additionally, "[u]nder Florida law, the determination of an insurer's duty to defend falls under the so-called 'eight corners rule,' the name of which refers to the four corners

---

[5] *See LaFarge Corp.*, 118 F.3d at 1516 (noting "Neither the Florida Supreme Court nor this court appears to have addressed the question of which party bears the burden of proving an *exception* to an *exclusion*, . . . . In *Hudson Insurance,* however, the United States District Court for the Middle District of Florida concluded that the burden was on the insured. *Id.* This appears to be the majority view. *See Aeroquip Corp. v. Aetna Casualty and Surety Co., Inc.,* 26 F.3d 893, 894–95 (9th Cir. 1994)).

[6] "A federal court sitting in a diversity action applies state law using the choice of law rules of the forum state" in this case, Florida. *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

of the insurance policy and the four corners of the underlying complaint." *Addison Ins. Co. v. 4000 Island Boulevard Condo. Ass'n, Inc.*, 721 F. App'x 847, 854 (11th Cir. 2017). "Put simply, the eight corners rule provides that an insurer's duty to defend its insured against a legal action 'arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage.'" *Id.* (quoting *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So.2d 435, 442-43 (Fla. 2005)).

This means Southern-Owners' duty to defend arises if the facts and legal theories in the Association's filings against the policy holders potentially bring the suit within the policy coverage.

It is well established that "[a]n insurer's duty to defend is a broad obligation . . . . And, '[i]f the allegations of the complaint leave any doubt regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend.'" *S. Owners Ins. Co. v. Gallo Bldg. Servs., Inc.*, 2018 WL 6619987, at *4 (M.D. Fla. Dec. 18, 2018), *reconsideration denied*, 2019 WL 3854779 (M.D. Fla. June 21, 2019) (quoting *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 814 (Fla. 1st DCA 1985)).

Furthermore, "the Florida Supreme Court has found that the duty to defend is both distinct from and broader than the duty to indemnify. Thus, insurers are obligated to defend even if the allegations in the complaint are inconsistent with the facts or completely meritless." *Westport Ins. Corp. v. VN Hotel Grp., LLC*, 513 F. App'x 927, 931 (11th Cir. 2013). "[T]he duty to defend is broader than the duty to indemnify in the sense that the insurer must defend even if facts alleged are actually untrue or legal theories unsound." *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995). "If an examination of the allegations of the complaint leaves

any doubt regarding the insurer's duty to defend, the issue is resolved in favor of the insured." *Id.* at 1580–81.

Extrinsic Evidence:

Florida courts established some "natural exceptions" to the rule that the duty to defend is determined solely by the allegations in the claimant's complaint. *Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 10 n.2 (Fla. 2004). "Florida courts have found . . . that in special circumstances, a court may consider extrinsic facts if those facts are **undisputed**, and, had they been pled in the complaint, they **clearly would have placed the claims outside the scope of coverage**." *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1323 (11th Cir. 2014) (emphasis added). Those instances "are best seen as exceptional cases in which courts have crafted an equitable remedy when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage." *First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 786 (11th Cir. 2008).

Moreover, "[u]nder Florida law, when there is an inconsistency between the facts and the complaint's allegations, the allegations control in determining the insurers' duty to defend. And when 'extrinsic evidence [is] not uncontroverted or manifestly obvious to all so as to preclude coverage[,]' it should not be considered in determining whether there is a duty to defend." *Travelers Indem. Co. v. Figg Bridge Engineers, Inc.*, 389 F. Supp. 3d 1060, 1070 (S.D. Fla. 2019) (quoting *Advanced Sys., Inc. v. Gotham Ins. Co.*, No. 3D18-1744, 272 So.3d 523, 527–28, 2019 WL 1646106, at *3 (Fla. 3d DCA Apr. 17, 2019) (alterations in original)).

Trigger of Coverage:

"There are four theories as to when 'property damage' has 'occurred' under a commercial

general liability policy, triggering coverage: 1) the exposure theory, 2) the manifestation theory,

3) the continuous trigger theory, and 4) the injury-in-fact theory."  *Ohio Cas. Ins. Co. v. Timber*

*Dev. Corp.*, 2013 WL 12148856, at *8 (M.D. Fla. Sept. 23, 2013).

> Under the exposure theory, property damage occurs upon installation of the
> defective product. Under the manifestation theory, property damage occurs at the
> time damage manifests itself or is discovered.  The continuous trigger approach
> defines property damage as occurring continuously from time of installation *until
> the time of discovery.*  And injury-in-fact (which is also referred to as damage-in-
> fact), coverage is triggered when the property damage underlying the claim actually
> occurs.

*Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co.*, 227 F. Supp. 2d 1248, 1266 (M.D. Fla. 2002)

(citations omitted) (emphasis in original).

Florida law is unsettled as to which theory governs the trigger of insurance coverage:

injury-in-fact or manifestation.  However recently, the Eleventh Circuit has suggested that injury-

in-fact is an appropriate trigger for district courts to use:

> "Property damage occurs when the damage happens, not when the damage is
> discovered or discoverable." *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240,
> 1247 (11th Cir. 2015) (interpreting nearly identical policy language). And **where
> the underlying allegations, <u>even though silent as to the timing of damages</u>, can
> be reasonably construed to allege property damage that occurred during the
> policy period, "there is a potential for coverage**." *Trizec Props.*, 767 F.2d at 813.

*S.-Owners Ins. Co. v. MAC Contractors of Fla., LLC*, 768 F. App'x 970, 973 (11th Cir. 2019)

(emphasis added).  The Eleventh Circuit continued: "[h]ere, although the underlying allegations

are silent as to the timing of the damages, the allegations can be reasonably construed to allege

damages that occurred during ongoing operations." *Id.*

## IV.  <u>DISCUSSION</u>

Southern-Owners' Motion for Summary Judgment on the duty to defend urges the Court to consider an expert affidavit outside the eight corners to find there is no duty to defend. Southern-Owners next argues the damage alleged falls outside the policy coverage and falls under a policy exclusion. The Court rejects these arguments for the foregoing reasons.

Eight corners rule:

Southern-Owners fails to establish that this is an extraordinary case that requires the Court to look beyond the eight corners of the underlying complaint and the insurance policy to determine the duty to defend. To look beyond the eight corners, the facts relied upon by Southern-Owners would have to be: 1) "undisputed;" and 2) "had they been pled in the [underlying] complaint, they clearly would have placed the claims outside the scope of coverage." *Stephens*, 749 F.3d at 1323.

Here, Southern-Owners invokes the affidavit of a general contractor who concluded that: "[a]s of December 1, 2006, Tower I was in the structural shell stage of construction, and not dried in. As such, there could not be any resultant water intrusion damage to any interior components such as insulation, drywall, cabinets, contents, etc., due to any purported defects in stucco installation, as of that date." (DE 96 at pdf 165). The affidavit also stated that no stucco work had been performed on Tower II as of December 1, 2006, so there could be no resultant damage due to stucco defects prior to the cancelation of the policy. (*Id.*). The affidavit noted that the key submittal for stucco had not been approved as of November 27, 2006. (*Id.*). Southern-Owners asserts that this defeats the duty to defend.

In response, Insureds dispute Southern-Owners characterization of the totality of the work assigned to and completed by Wentworth, as well as the construction stages of Towers I and II. Insureds assert that Southern-Owners attached and cited an incomplete version of the subcontract

agreement[7] between Catalfumo and Wentworth.  (DE 100 at pdf 2, Response to ¶ 6).   Insureds also suggest that the general contractor did not have the complete copy of the subcontract when making his conclusions in the affidavit.  (*Id.* at pdf 2-3).  Pointing to what they argue is the complete subcontract, Insureds highlight the scope of work outlined as "Exterior Metal Framing, Lath & Stucco – Tower 1, Tower 2, Garage, Pool Building & Cabanas."  (*Id.* at pdf 132).  Insureds agree that no stucco or lath work had begun on Tower II but argue "it is possible exterior framing work had begun" and note that the affidavit failed to address this issue because "he appeared to have an incomplete copy of the relevant subcontract."  (*Id.* at pdf 3).

Insureds also dispute the amount of work completed on Tower I.  In contrast to Southern-Owners' statement of facts and the affidavit, Insureds argue the payment applications indicate "75% of lath and stucco work on balconies up to the fifth floor had at least been completed by the time of submission of November 21, 2006."  (*Id.*); *see also* (DE 96, pdf 169-70).  Insureds also dispute Southern-Owners' assertion that no work on the project began until November 2006; Insureds argue that the pay application cited with an end date of October 2006 "only show[s] the end date for the payment application and not the start date."  (DE 100 at pdf 2); *see* (DE 96, pdf 136-63).

While the amount and timing of work completed by Wentworth is in dispute, all parties admit that at least *some* stuccowork had begun on the balconies of Tower I prior to the cancelation of the policy.  In the Motion to Dismiss, Southern-Owners states "Wentworth had just began work on the project a few weeks prior to December 1, 2006-the date the Southern-Owners policy was

_____

[7] The Southern-Owners statement of facts and attachments do not appear to include the five-page Exhibit C attached to the subcontract agreement.  (DE 96, pdf 128-34).  However, it was included in Insureds' statement of facts and attachments.  (DE 100, pdf 132-36).

cancelled."  (Mot. at 9).  As Insureds argue, "[i]f not, then there is a dispute of fact on this issue," which would also preclude granting summary judgment.  (Opp. at 11).

Insureds also reject the Affidavit's contention that there could be no resulting damages by December 1, 2006.  (*Id.*).  Insureds argue that the underlying complaint alleges resulting damages. (*Id.*); *see* (DE 100, pdf 25 at ¶ 31, pdf 83-84 at ¶¶ 240-41).  Insureds argue "[t]his means Southern-Owner's expert is saying one thing and the Association is saying another," which fails to satisfy the exception of an undisputed fact.  (*Id.*).

Insureds correctly argue "[i]f the 'occurrence' is the actual damage, then the pleadings and the expert affidavit are at odds, and nothing in the exception relied upon by Southern-Owners allows the Court to overlook allegations made in the pleadings."  (*Id.*).

Furthermore, the facts Southern-Owners argues were not in the underlying complaint do not strike the Court as overt omissions on the part of the Association designed to unfairly create a duty to defend.  *Cf. Underwriters at Lloyds London v. STD Enters., Inc. (Underwriters),* 395 F. Supp. 2d 1142 (M.D. Fla. 2005);  *Nationwide Mutual Fire Ins. Co. v. Keen (Keen),* 658 So.2d 1101 (Fla. Dist. Ct. App. 1995); *See First Specialty Ins. Corp.*, 300 F. App'x at 785-86 (explaining in *Underwriters* "[t]he employee failed to mention in his complaint that he was using the vehicle for business purposes, a fact that would have barred coverage under the exclusion" and "[i]n *Keen,* the underlying plaintiff was piloting a water craft which used an engine that was too powerful to be covered under the insurance policy.").

Because the facts Southern-Owners presents are not undisputed and do not seem to be of the sort intentionally omitted from the underlying complaint, the Court is unpersuaded that this is an extraordinary case that requires the Court to look beyond the eight corners to "craft[] an

equitable remedy when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage." *First Specialty Ins. Corp.*, 300 F. App'x at 786.

The Court will proceed to address Southern-Owners' claims that the underlying complaint alleges damage that falls outside the policy coverage or into a policy exclusion.

"Property damage" coverage:

"Florida law provides that faulty workmanship can constitute an 'occurrence' when the work causes 'property damage' to the completed project." *Core Constr. Servs. Se., Inc.*, 2015 WL 8043940, at *2. "According to [Florida Supreme Court] cases, 'faulty workmanship or defective work that has damaged the otherwise nondefective completed project has caused 'physical injury to tangible property' within the plain meaning of the definition in the policy.'" *Carithers*, 782 F.3d at 1249 (quoting *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 889 (Fla. 2007) (further holding "We . . . reject U.S. Fire's contention that there can never be 'property damage' in cases of faulty construction because the defective work rendered the entire project damaged from its inception."). The Florida Supreme Court explained the distinction as such:

> [T]his case does not involve a claim for the cost of repairing the subcontractor's defective work, but **rather a claim for repairing the structural damage to the completed homes caused by the subcontractor's defective work**. Specifically, it was the subsequent soil settlement due to the subcontractor's faulty workmanship that caused the structural damage to the homes. Because there was "**physical injury to tangible property**," we conclude that the **structural damage to the homes is "property damage" within the meaning of the policies**.

*J.S.U.B., Inc.*, 979 So. 2d at 890 (emphasis added).  The Eleventh Circuit confirmed "these cases only apply this rule to the work of sub-contractors." *Carithers*, 782 F.3d at 1249 (citing to *J.S.U.B.*, 979 So. 2d at 890 ("Even if a 'moral hazard' argument could be made regarding the contractor's own work, the argument is not applicable for the subcontractors' work.").

Here, the underlying complaint alleges "[b]ond failure, delamination, cracks, staining, leaks and/or water intrusion in the stucco." (DE 96 at pdf 109). It alleges water intrusion and damage *as a result of* defective stucco and lath work, not just defective stuccowork, which places the allegations of the damage firmly under the "property damage" policy coverage. (DE 96 at pdf 109). The Court finds at least some of the allegations in the underlying complaint fairly and potentially fall within the scope of the CGL policies for "property damage." The Court will still address Southern-Owners' arguments about the timing and exclusions.

Timing:

In addition to the argument that the underlying complaint alleges property damage that is not covered by the policy, Southern-Owners argues the damage alleged did not occur within the policy period. However, "[t]o prevail at this stage then, [insurance company] bears the burden of proving that the alleged property damage did not actually occur within the policy period." *BITCO Nat'l Ins. Co. v. Old Dominion Ins. Co.*, 379 F. Supp. 3d 1230, 1240 (N.D. Fla. 2019), *reconsideration denied,* 2019 WL 3855321 (N.D. Fla. May 2, 2019). The Court then must consider which theory to apply to determine whether the duty to defend is triggered.

a. Injury-in-fact or manifestation theory:

The question of which theory to use is contested in the instant case and is still unsettled in Florida.[8] Southern-Owners argues, however, both predominant theories—injury in fact and manifestation—support no duty to defend. The Insureds do not explicitly advocate for one theory in favor of the other.

---

[8]*BITCO Nat'l Ins. Co.*, 379 F. Supp. 3d at 1240 ("The Florida Supreme Court has not yet considered which theory is correct.").

19

The Eleventh Circuit recently reversed summary judgment in favor of the insurer because, "[h]ere, although the underlying allegations are silent as to the timing of the damages, the allegations can be reasonably construed to allege damages that occurred during ongoing operations." *MAC Contractors*, 768 F. App'x at 973.  The court reaffirmed the principles that:

> "Property damage occurs when the damage happens, not when the damage is discovered or discoverable." *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1247 (11th Cir. 2015) (interpreting nearly identical policy language). And where the underlying allegations, even though silent as to the timing of damages, can be reasonably construed to allege property damage that occurred during the policy period, "there is a potential for coverage." *Trizec Props.*, 767 F.2d at 813.

*Id.*  The court concluded, "[c]onstruing the Your Work exclusion narrowly and resolving all doubts in favor of [the insured], we conclude that the underlying allegations can fairly be construed to allege damages during ongoing operations."  *Id*.

In a similar instance where the underlying complaint did not allege when the insured completed its work, another District Court took note of the recent Eleventh Circuit decision in *MAC Contractors* and concluded "based on the allegations of the Underlying Complaint, the damage could have occurred any time after commencement of construction and before the inspection, thereby potentially including ongoing operations."  *Auto-Owners Ins. Co. v. Envtl. House Wrap, Inc.*, 2019 WL 3069080, at *8 (M.D. Fla. July 12, 2019).  The court continued: "[w]hile the allegation that the defects were not discovered, or capable of discovery, until the inspection, could mean that the property damage occurred long after Environmental completed its work on the Project, this is not the only possible inference."  *Id.*  The court reasoned "[t]he allegations could also, 'at least marginally and by reasonable implication,' refer to water damage that began years before the inspection, but were not discovered, or were discovered but not indicative of construction defects, until later."  *Id.* (quoting *Trizec*, 767 F.2d at 813).

Just as in *MAC Contractors* and *Environmental House Wrap*, the Court "is required to resolve any doubts as to a duty to defend in favor of the insured." *Id.* (citing *Lawyers Title Ins. Corp.*, 52 F.3d at 1580-81 which held "[g]iven that the underlying complaint did not indicate when the damage occurred or was discovered, the 'relevant pleadings allege facts that 'fairly and potentially bring the suit within policy coverage.'"").

The underlying complaint is silent as to the timing or discovery of the damage. However, because it is undisputed that at least some stuccowork transpired during the policy period, the Court is compelled to consider that the underlying complaint "'at least marginally and by reasonable implication,'. . . could be construed to allege that the damage . . . may have begun to occur immediately after installation. . . ." *Trizec Properties, Inc.*, 767 F.2d at 813 (citation omitted).

The Court therefore finds that the underlying allegations allege facts that at least partially fall within coverage.

Exclusions:

"Under Florida law, exclusionary insurance provisions are 'construed even more strictly against the insurer than coverage clauses.'" *VN Hotel Grp., LLC*, 513 F. App'x at 932 (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). "The burden of demonstrating that the allegations of the underlying suit are 'cast solely and entirely within the policy exclusion' rests with the insurer." *AIX Specialty Ins. Co. v. Ashland 2 Partners, LLC*, 383 F. Supp. 3d 1334, 1338 (M.D. Fla. 2019) (citation omitted).

Southern-Owners argues that the "your work" exclusion extinguishes the duty to defend based on the allegations in the underlying complaint.

The Eleventh Circuit's opinion in *Auto-Owners Ins. Co. v. Elite Homes, Inc.*, 676 F. App'x 951 (11th Cir. 2017) supports a stringent reading of the "your work" exclusion:

> [The insured] also argues that the district court's holding essentially requires the underlying complaint to specifically identify particular property damage to trigger [insurer]'[s] duty to defend and that this level of specificity is unnecessary. **Although we agree that such a level of specificity is not required under Florida law, in this case the language in the amended complaint is too vague for us to assume that the [homeowners] alleged anything other than damages to the home, and therefore [insured's] own work**. As a result, the damage alleged falls squarely within the "Damage to Your Work" exclusion.

*Auto-Owners Ins. Co. v. Elite Homes, Inc.*, 676 F. App'x 951, 955 (11th Cir. 2017) (emphasis added).

However, this case is distinguishable from *Elite Homes* in that the Court has already determined that the underlying complaint alleges "property damage," which is separate from the damage to the stuccowork itself. *See Morette Co. v. S.-Owners Ins. Co.*, 301 F. Supp. 3d 1175, 1185–86 (N.D. Fla. 2017) ("As the Court has already determined that the state court lawsuit alleges that Etheridge Construction and Wallace Sprinkler's faulty workmanship caused 'physical injury' to the work product of other subcontractors, it necessarily follows that the impaired property exclusion, on its face, is inapplicable.")

Other district courts have declined to grant summary judgment in favor of the insurer where the insurers failed to meet their "burden of demonstrating that the allegations in the underlying complaint fall solely and entirely within the exclusion," and reiterated that "any doubts as to whether Plaintiffs have a duty to defend must be resolved in favor of [the insured]." *Owners Ins. Co. v. Bobby T., Inc.*, 2018 WL 1524400, at *3 (M.D. Fla. Mar. 28, 2018)*; see also Evanston Ins. Co. v. DiMucci Dev. Corp. of Ponce Inlet, Inc.*, 2017 WL 477649, at *7 (M.D. Fla. Feb. 6, 2017), *reconsideration denied,* 2017 WL 1653731 (M.D. Fla. May 2, 2017), and *appeal dismissed*

*sub nom. Essex Ins. Co. v. DiMucci Dev. Corp. of Ponce Inlet*, 2017 WL 5495461 (11th Cir. July 24, 2017), and *appeal dismissed sub nom. Essex Ins. Co. v. DiMucci Dev. Corp. of Ponce Inlet*, 2017 WL 5495461 (11th Cir. July 24, 2017).

In *Bobby T.*, the court found that "there are disputed issues of fact as to the property damaged which preclude summary judgment on the issue of indemnification." *Id.* Primarily, the court found the "your work" exclusion did not apply because the "complaint in the underlying action can be reasonably interpreted to allege damage to property other than that on which [insured] performed work." *Bobby T., Inc.*, 2018 WL 1524400, at *3. The underlying complaint in *Bobby T.* "alleges damage to property other than '[w]ork or operations performed by [insured] or on [its] behalf, [or] Materials, parts or equipment furnished in connection with such work or operations'" which the court found "alleges facts that fairly bring the suit within the policy coverage and which are not 'cast solely and entirely' within the 'Damage to Your Work' policy exclusion." *Id.* The court concluded "[a]t best, it is unclear from the face of the underlying complaint that the water penetration did not damage property other than the staircases and landings. Although the complaint alleges damage to the exterior staircases and landings, the areas [insured] was originally hired to repair," critically, "**it is not clear that no other property was damaged**." *Id.* (emphasis added).

Similarly, Southern-Owners has not met its burden of demonstrating that the allegations in the underlying complaint fall solely within the "your work" exclusion. Resolving any doubts in favor of the insured, the Court finds that the underlying complaint could be construed as alleging damage to property other than the stuccowork itself. For example, the underlying complaint alleges, among other things: "extensive cracking and bleeding moisture through cracks;" "water

intrusion between masonry/concrete and stucco;" and "water weeping from horizontal control joints." (DE 96 at pdf 109). As in *Bobby T.*, "it is unclear from the face of the underlying complaint that the water penetration did not damage property" other than the stuccowork and "[a]lthough the complaint alleges damage to . . ., the areas [insured] was originally hired to [work on], it is not clear that no other property was damaged." *Bobby T., Inc.*, 2018 WL 1524400, at *3.

Additional Insureds:

    Under Florida law, "[t]he creation of the basic insurer-insured relationship and the ensuing duty to defend cannot be left to the imagination of the drafter of a complaint . . . and as to *who* is an insured, the facts as they actually exist must be determinative." *Nateman v. Hartford Cas. Ins. Co.*, 544 So. 2d 1026, 1027 (Fla. Dist. Ct. App. 1989) (citation omitted).

    Singer Island Ltd. And Catalfumo are listed on the CGL policy as additional insureds, therefore this is no question of whether they qualify as additional insureds or only claim to be additional insureds. (DE 96 at pdf *Cf. Medmarc Cas. Ins. Co. v. Spinefrontier, Inc.*, No. 17-22875-CIV, 2018 WL 4929414, at *4 (S.D. Fla. Sept. 28, 2018).

    The Court finds that Southern-Owners arguments similarly fail when applied to the additional insureds. (DE 96 at pdf 211).

## V. **CONCLUSION**

    The Court concludes Southern-Owners' Motion for Summary Judgment on the duty to defend fails. Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

The Motion for Summary Judgment (DE 95) is DENIED.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 9th day of December 2019.

_____
KENNETH A. MARRA
United States District Judge